**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**BRIAN LLOYD**,
**as Parent and Next Friend of M.L.,**

Plaintiff,

v.

**INGENUITY PREP PUBLIC CHARTER**
**SCHOOL**,

Defendant.

Case No. 1:18-cv-00801 (TNM)

<u>**MEMORANDUM OPINION**</u>

Plaintiff Brian Lloyd sued Ingenuity Prep Public Charter School ("Ingenuity Prep" or

"the School") on behalf of M.L., his minor daughter, who attends the School.  He seeks to

recover attorneys' fees and costs incurred while litigating administrative claims under the

Individuals with Disabilities Education Act ("IDEA") and defending against a counterclaim filed

in this Court by Ingenuity Prep.  After assessing the parties' arguments, Magistrate Judge Harvey

recommended that the Court grant in part and deny in part Lloyd's Motion for Attorneys' Fees.

Both parties objected to Magistrate Judge Harvey's Report and Recommendation ("Report").

Upon consideration of the Report, the parties' objections, the briefing before the Magistrate

Judge, and the entire record, the Court will adopt in part the findings and conclusions of the

Report.  The Court will award Lloyd $40,867.36 in attorneys' fees and costs.

## I.

The Report comprehensively recounts the relevant facts, *see* Report at 2–7, ECF No. 32,[1] and neither party objects to any factual findings, so only a review of the procedural history is necessary.  In September 2017, Lloyd filed a complaint with the D.C. Office of the State Superintendent of Education, alleging that Ingenuity Prep had denied M.L. a free appropriate public education ("FAPE") as guaranteed by the IDEA.  Compl. Ex. 1 at 2, ECF No. 1-1.  Lloyd sought an order requiring the School to fund independent evaluations of his daughter, develop a new individualized education program ("IEP") tailored to her needs, and fund compensatory education that would allow her to advance two grade levels after she finished repeating the third grade.  *Id.* at 2–3 & n.3.  Negotiations failed to produce a settlement.  *See* Def.'s Mem. of P. & A. in Opp'n to Pl.'s Mot. for Attys' Fees ("Def.'s Second Opp'n") Ex. 1 at 35–130, ECF No. 30-1.  The parties proceeded to an administrative adjudication, where a hearing officer found for Lloyd on some, but not all, of his claims against the School.  Compl. Ex. 1 at 10–17.  The hearing officer accordingly ordered Ingenuity Prep to provide M.L. with 100 hours of tutoring and certain evaluations but declined to award the full remedies Lloyd sought.  *Id.* at 17–18.

In January 2018, the parties began negotiating over the costs and attorneys' fees that Lloyd incurred in pursuing the administrative action.  Def.'s Second Opp'n Ex. 1 at 132–64.  Lloyd sued after rejecting the School's final offer of $4,400.  *See id.* at 156–57.  Ingenuity Prep filed an answer and counterclaim seeking to appeal the findings and relief issued by the hearing officer.  *See* Def.'s Answer and Countercl., ECF No. 3.  Lloyd moved to dismiss the counterclaim as time-barred, *see* Pl.'s Mot. to Dismiss, ECF No. 5, and after a round of briefing

---

[1]  All page citations refer to the pagination generated by the Court's CM/ECF system and all exhibit numbers refer to the numbered attachments to the CM/ECF filings.

Magistrate Judge Harvey issued a report agreeing.  *See* R. & R., ECF No. 9.  This Court adopted the report in full, rejecting the School's objections and dismissing the counterclaim.  *See Lloyd v. Ingenuity Prep Pub. Charter Sch.*, 368 F. Supp. 3d 25 (D.D.C. 2019).

Lloyd moved for attorneys' fees and costs, and the parties completed a round of briefing before Magistrate Judge Harvey.  *See* ECF Nos. 17, 18, 21.  The D.C. Circuit then issued *DL v. District of Columbia*, clarifying the proper analysis of petitions for fees under the IDEA.  924 F.3d 585, 593–94 (D.C. Cir. 2019).  Magistrate Judge Harvey requested another round of briefing so that the parties could consider *DL*.  *See* ECF No. 25.  Lloyd's briefs failed to request a specific amount in fees, but he submitted invoices totaling $76,954.20 in attorneys' fees, $4,987.50 in expert fees, and $1,244.50 in costs.  *See* Report at 6–7 (citing ECF Nos. 27-10, 27-11, 27-12, 30-1 at 22).  Ingenuity Prep opposed the request on multiple grounds, arguing for an award of $2,108.36 to Lloyd.  *See* Def.'s Second Opp'n at 36.

Magistrate Judge Harvey ultimately recommended awarding $47,417.02 to Lloyd. Report at 32–33.  At the outset, the Report noted that there was no dispute that Lloyd was the "prevailing party" in the administrative proceedings.  *Id.* at 7–8; *see* 20 U.S.C. § 1415(i)(3)(B)(i) (limiting awards in IDEA actions to "prevailing party").  The Report rejected Ingenuity Prep's contention that Lloyd had no right to compensation for fees incurred after the pre-hearing settlement negotiations, concluding that Lloyd was "substantially justified" in rejecting the settlement offers.  Report at 9–14.  The Report next determined that this case qualified as "complex federal litigation" and recommended awarding fees based on the full rates in the USAO Matrix, a variation of the *Laffey* Matrix.[2]  *Id.* at 14–23.  Although Magistrate Judge

---

[2]  As the Report explains, the USAO Matrix is one of three matrices used in this district for determining appropriate hourly rates for attorneys of varying experience levels engaged in complex federal litigation.  *See* Report at 6 n.4; *see also Laffey v. Nw. Airlines, Inc.*, 572 F. Supp.

Harvey rejected Ingenuity Prep's claims that the number of hours billed by Lloyd's attorneys was unreasonable, he recommended reducing the overall fee award by 40 percent because of Lloyd's limited success in the administrative proceedings. *Id.* at 23–30. Lastly, the Report recommended denying Lloyd's expert fees because he failed to show that they were reasonable and based on prevailing rates. *Id.* at 30–32.

Pending here are several objections by Ingenuity Prep to the Report, as well as one objection by Lloyd. *See* Def.'s Objs. to the Magistrate Judge's R. & R. ("Def.'s Objs."), ECF No. 34; Pl.'s Objs. to the Magistrate Judge's R. & R. ("Pl.'s Obj."), ECF No. 35. The objections are ripe, and the Court will address them below.

## II.

Courts in this district may refer motions for attorneys' fees to a magistrate judge for assessment. LCvR 72.3(a)(7). After a magistrate judge issues a report and recommendation, any party may file written objections within fourteen days. LCvR 72.3(b). The Court reviews de novo the parties' timely objections. LCvR 72.3(c); *see also Baylor v. Mitchell Rubenstein & Assocs., P.C.,* 857 F.3d 939, 947 (D.C. Cir. 2017) ("[W]e join a number of our sister circuits in requiring that motions for attorneys' fees be reviewed *de novo* if referred to a Magistrate Judge and properly objected to."). The Court need not review the unobjected-to portions of the Report

---

354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984) (introducing so-called *Laffey* Matrix). Ingenuity Prep contends that this case was not complex enough to qualify for 100 percent of the rates in the matrix, rather than a reduced percentage. But neither party disputes that the USAO Matrix is suitable to calculate the rates. *See* Report at 18–20. This fact distinguishes this case from *DL*, where the D.C. Circuit held that the district court abused its discretion in presuming that the USAO Matrix applied in the face of the plaintiff's objections. 924 F.3d at 590–93.

before adopting them.  *See Harris v. Friendship Pub. Charter Sch.*, 18-cv-396, 2019 WL 954814, at *2 (D.D.C. Feb. 27, 2019); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

### III.

The IDEA permits a court to award "reasonable attorneys' fees . . . to a prevailing party who is the parent of a child with a disability."  20 U.S.C. § 1415(i)(3)(B).  The party seeking fees bears the rebuttable burden of establishing entitlement to an award.  *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995).  To determine whether fees are reasonable, courts must consider "(1) the numbers of hours reasonably expended in litigation; and (2) the reasonable hourly rate for the services provided."  *Reed v. District of Columbia*, 843 F.3d 517, 520 (D.C. Cir. 2016) (cleaned up).  Even after establishing reasonable rates and hours, courts may reduce awards to account for limited success on the underlying administrative claims or where plaintiffs had rejected settlement offers that were not more favorable than the relief won in administrative proceedings.  *See Daniel v. District of Columbia*, 174 F. Supp. 3d 532, 541, 550 (D.D.C. 2016).

The Court adopts in full the unobjected-to portions of the Report, such as Lloyd's status as the prevailing party in the administrative proceedings and the denial of expert fees.  The Court will address the parties' specific objections in turn.[3]

---

[3]  Ingenuity Prep contends that Lloyd conceded certain points that it made in its opposition to the revised motion for attorneys' fees by failing to rebut them in his revised reply brief, despite his advancing the rebuttal arguments in his initial reply brief submitted during the pre-*DL* round of briefing.  *See* Def.'s Objs. at 1–3.  Given the confusion over the scope of the briefing, the Court is not inclined to find that Lloyd forfeited any substantive arguments that he raised in the initial round of briefing.  More, Lloyd's reply brief in the second round sufficiently addresses the points raised by Ingenuity Prep.  *See generally* Pl.'s Reply to Def.'s Opp'n to Pl's Revised Mot. for Attorneys' Fees, ECF No. 31.  In any event, any arguable failure by Lloyd to respond to a point in opposition was largely limited to rebutting the School's arguments that the number of hours billed by Lloyd's counsel was unreasonable.  Given that the Court determines below that the

## A.

Ingenuity Prep's first objects to Magistrate Judge Harvey's determination that Lloyd was substantially justified in rejecting Ingenuity Prep's settlement offer of November 10, 2017.[4] Def.'s Objs. at 3–10. The IDEA prohibits awarding attorneys' fees for "services performed subsequent to the time of a written offer of settlement to a parent" if the offer is not timely accepted and "the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement." 20 U.S.C. § 1415(i)(3)(D)(i). But the statute carves out an exception. A court may award fees "to a parent who is the prevailing party and who was substantially justified in rejecting the settlement offer." *Id.* § 1415(i)(3)(E).

This exception requires a twofold inquiry. A court must first determine whether the relief awarded at the administrative proceedings was not more favorable to the plaintiff than the settlement offer; if so, then the plaintiff may receive an award for post-offer fees only if the rejection of the offer was "substantially justified." *See Daniel*, 174 F. Supp. 3d at 541.

Magistrate Judge Harvey determined that the November 10 offer was at least as favorable as the relief ultimately provided by the hearing officer. Report at 10. Neither party questions this conclusion in their objections. Nor does the Court—especially where the settlement offer included all the relief provided in the hearing officer's order. *Compare* Def.'s Second Opp'n Ex. 1 at 71–72, *with* Compl. Ex. 1 at 17–18. The Report, however, concluded that Lloyd was

---

hours were indeed unreasonable even when considering Lloyd's arguments, it is immaterial whether Lloyd advanced certain points in his first but not his second reply brief.

[4] Lloyd also rejected a later settlement offer, but Ingenuity Prep focuses on the November 10 settlement in its objections. *See* Def.'s Objs. at 3–10. In any event, the Court agrees with Magistrate Judge Harvey that the analysis for both offers is the same. *See* Report at 14 n.9.

"substantially justified" in rejecting the settlement offer because the offer required as a condition of grade promotion that Lloyd's daughter achieve minimum test scores that were too high. Report at 12–14. Ingenuity Prep contends that Magistrate Judge Harvey erred in concluding that the rejection was "substantially justified." Def.'s Objs. at 3–10.

The Court starts with the standard at issue. The phrase "substantially justified" has eluded a precise definition, as the Report notes. Report at 10–11. Courts in this district have found "substantially justified" reasons for rejecting settlement offers where the offer failed to sufficiently cover the parents' attorneys' fees, *see, e.g.*, *Dicks v. District of Columbia,* 109 F. Supp. 3d 126, 131–32 (D.D.C. 2015), and where a pending court case could have affected the favorability of the settlement terms, *see B.L. ex rel. Lax v. District of Columbia*, 517 F. Supp. 2d 57, 61 (D.D.C. 2007). Canvassing the case law in this district and elsewhere, the Report concluded that the substantially justified standard "is met when the fee applicant has presented a colorable reason for rejecting the offer." Report at 10. Other courts have explained that "[w]hile there is a paucity of precedent interpreting the phrase 'substantially justified,' most courts addressing the issue have found substantial justification when a plaintiff had a good faith, reasonable belief that [his] eventual recovery would be higher than the offer." *L.R. v. Hollister Sch. Dist.*, 5:13-MC-80085-EJD, 2014 WL 1118019, at *4 (N.D. Cal. Mar. 19, 2014) (quoting *JP ex rel. Peterson v. Cnty. Sch. Bd. of Hanover Cnty., Va.*, 641 F. Supp. 2d 499, 508 (E.D. Va. 2009)).

In defending Magistrate Judge's Harvey's determination, however, Lloyd recasts the standard as requiring "a good faith basis" alone. Pl.'s Resp. to Def.'s Objs. to the Magistrate Judge's R. & R. at 7, ECF No. 41. Adopting the "good faith, reasonable belief" standard as correct, Ingenuity Prep points to the word "reasonable" and rejects Lloyd's reinterpretation.

Def.'s Reply to Pl.'s Opp'n to Def.'s Objs. to the Magistrate Judge's R. & R. at 3, ECF No. 43 (citing *L.R.*, 2014 WL 1118019, at *4).  This Court questions the focus on the "belief" of a plaintiff, good faith or otherwise.[5]  And the Court doubts that any "colorable reason" for rejecting a settlement offer would do.  The bounds of "substantially justified" may be an area of the law meriting further development.  But whatever the precise definition, the Court agrees with Ingenuity Prep that the basis for rejecting a settlement offer must also be at least objectively reasonable if it is to be substantially justified.  Since this is the standard the School invokes, the Court will not stray beyond it now.

The Court concludes that Lloyd was substantially justified in turning down the November 10 settlement offer.  Negotiations failed because of the minimum test scores that Lloyd's daughter would have to achieve before advancing to fifth grade.[6]  More specifically, the settlement offer required M.L., who "was most recently at the 7th percentile in Math and the 14th percentile in Literacy" among fourth-grade students to "achieve end of year scores [on par with] non-disabled fourth graders in both math and language" before advancing to fifth grade.  Def.'s Second Opp'n Ex. 1 at 108.  Lloyd's attorney informed counsel for the School that these conditions were "not a reasonable expectation" based on the 100 hours of tutoring in the offer.  *Id.*  Counsel for the School did not dispute this appraisal.  *Id.* at 106.  She instead followed up to

---

[5]  In interpreting a different statute, but one also addressing attorneys' fees, the Supreme Court noted the ambiguity of the word "substantial" before concluding that the phrase "substantially justified" conveyed "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (interpreting 28 U.S.C. § 2412(d)(1)(A), a portion of the Equal Access to Justice Act (EAJA)).

[6]  Lloyd provided this explanation in his second reply brief before Magistrate Judge Harvey.  *See* Pl.'s Reply to Def.'s Opp'n to Pl's Revised Mot. for Attorneys' Fees at 7 n.3, ECF No. 31.  The Court declines the School's invitation to discount the argument just because it appeared in a footnote.

say that the School would be "willing to lower the bar for promotion" as part of a new settlement offer. *Id*. The School's new grade promotion conditions were largely the same, however, so the parties failed to reach a settlement. *See id.* at 104–105.

Ingenuity Prep suggests that Lloyd acknowledged that the conditions for promotion were reasonable because he did not contest them until the November 10 offer. Def.'s Objs. at 5. But a party need not contest every deficient aspect of a potential settlement at every juncture. And at issue here is specifically the basis for Lloyd's rejection of the November 10 offer, not any prior offers. More importantly, Ingenuity Prep's argument conflicts with its recitation of events in its briefing before the Magistrate Judge. The School's brief states that "promotion to the next grade . . . was ultimately the reason that the Plaintiff rejected Defendant's offers" and further claims that Lloyd's counsel had "acknowledge[d] the promotion conditions as the only reason why Plaintiff rejected Defendant's offers." Def.'s Second Opp'n at 9. Reviewing the record confirms that Lloyd rejected the November 10 offer based on the unrealistic standards for grade promotion, which were a longstanding obstacle to settlement and were never accepted by Lloyd.

Ingenuity Prep next contends that Lloyd could not have reasonably rejected the offer and proceeded to an administrative hearing because the hearing officer had no power to alter the conditions for grade promotion, such as the test scores that M.L. would have to achieve. Def.'s Objs. at 6. The School errs by treating the conditions for grade promotion, which the hearing officer could not modify, as totally distinct from the amount of compensatory education given to M.L., which the hearing officer could increase. Some amount of compensatory education—like tutoring—may have been sufficient for M.L. if the School relaxed the promotion requirements,

but if the requirements stayed fixed then the hours of tutoring would need to increase.[7]  So even if the parties appeared at one point to agree on one part of a proposed settlement—the number of tutoring hours—Lloyd could later reasonably seek more compensatory education from the hearing officer once it became clear that the School would not budge on the test scores.  Lloyd reasonably accepted the School's explicit invitation to "take his chances at a hearing" in pursuit of enough compensatory education to give M.L. a plausible shot at matriculating on schedule.  Def.'s Second Opp'n Ex. 1 at 104.

In its objections, Ingenuity Prep also spends several pages distinguishing cases cited by Magistrate Judge Harvey when searching for the meaning of "substantially justified."  Def.'s Objs. at 7–9.  These factual distinctions are not helpful.  Lloyd did not need to have exactly the same reason for rejecting the School's offer as any of the plaintiffs in the out-of-district cases that the School cites.  What matters is whether Lloyd was substantially justified in rejecting the November 10 offer.  Ingenuity Prep accepts that Lloyd was justified if he had "a reasonable, good faith belief" that the result of the administrative hearing would be superior to the settlement offer.  *Id.* at 8; Def.'s Reply to Pl.'s Opp'n to Def.'s Objs. to the Magistrate Judge's R. & R. at 3, ECF No. 43.  But the School fails to show why it was unreasonable or in bad faith for Lloyd to pursue a hearing in the face of the undisputedly unrealistic prospects at grade promotion offered by the School.  The Court agrees with the Report that Lloyd was substantially justified in rejecting the November 10 settlement offer, so he may recover fees incurred after the rejection.  *See* 20 U.S.C. § 1415(i)(3)(E).

---

[7]  The School appeared to recognize this logic during settlement negotiations.  In response to Lloyd rejecting the November 10 settlement offer based on the standards for grade promotion, Ingenuity Prep's next offer tweaked the conditions for grade promotion *as well as* increased the hours of tutoring and specialized instruction.  *See* Def.'s Second Opp'n Ex. 1 at 105–06.

**B.**

Ingenuity Prep objects to the Report's recommendation that the Court award fees based on the full rates in the USAO Matrix, rather than reducing the rates to account for the relative non-complexity of the case.  Def.'s Objs. at 10–14.  The Report correctly interprets the D.C. Circuit's decision in *DL* as confirming that courts may consider whether an individual IDEA action rises to the level of "complex federal litigation" meriting full rates.  Report at 16 (quoting *DL*, 924 F.3d at 594).  Magistrate Judge Harvey then persuasively explains why this case qualified as "complex federal litigation." *Id.* at 16–18.

Ingenuity Prep faults the Report for relying on the complexity of the litigation in federal court when determining whether the case rose to the level of complex federal litigation.  Def.'s Objs. at 12–13.  But facing similar circumstances, the court in *Thomas v. District of Columbia*, determined that it must consider the complexity of the whole case rather than focusing solely on the administrative portion.  908 F. Supp. 2d 233, 247 (D.D.C. 2012).[8]  There the court characterized the administrative proceedings as "largely routine" but concluded that the case qualified as "complex federal litigation" based on the complexity of the litigation in federal court. *Id.* at 247–48.

---

[8]  This logic follows the common practice in this district of awarding the same fee rates for the underlying administrative action as for any later fees-on-fees litigation in federal court. *See Merrick v. District of Columbia*, 316 F. Supp. 3d 498, 517 (D.D.C. 2018) (collecting cases).  To be sure, the D.C. Circuit has not required this practice. *Reed*, 843 F.3d at 526–27 (explicitly declining to decide if same rate must apply to "all aspects of an IDEA litigation" because it was unnecessary to the decision).  But the Circuit has held that courts should consider a request for a fee award and later fees-on-fees litigation as part of the "same action" when applying the IDEA's statutory fee cap. *Id.*  And as the Supreme Court has noted when addressing the Equal Access to Justice Act's fee provisions, "fee-shifting statutes [ ] favor[ ] treating a case as an inclusive whole, rather than as atomized line-items." *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 161–62 (1990).  This Court is similarly disinclined to slice up various portions of a case when determining whether the parties have engaged in complex federal litigation.

So too here.  The administrative proceedings were straightforward, but the litigation in federal court has stretched over several years and included addressing a complicated statute-of-limitations issue that was a matter of first impression in this district.  *See Lloyd*, 368 F. Supp. 3d at 27–29.  Ingenuity Prep correctly notes that the mere existence of multiple rounds of briefing does not make a case complex.  Def.'s Objs. at 11–12.  That occurrence is unremarkable where attorneys' fees matters are routinely referred to magistrate judges.  But this matter included two rounds of briefing on Ingenuity Prep's counterclaim, plus three rounds on the attorneys' fees given the need to address the effect of the D.C. Circuit's intervening decision in *DL*.  And multiple rounds of briefing are but one indicia of complexity.  *See Thomas*, 908 F. Supp. 2d at 247–48 (relying also on need to examine question of first impression under the statute).  The Court ultimately agrees with the Report that the case as a whole rose to the level of complex federal litigation, so the Court will award Lloyd's fees at 100 percent of the USAO Matrix rates, as he requested.[9]

## C.

As it did in response to Lloyd's motions for attorneys' fees, Ingenuity Prep contends that the number of hours billed by Lloyd's counsel was unreasonable.  Def.'s Objs. at 14–17.  In fashioning the award, the Court "must determine the number of hours *reasonably* expended in litigation."  *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015) (emphasis added) (cleaned up).  The "fee applicant bears the burden of . . . documenting the appropriate hours" but "the opposing party remains free to rebut a fee claim."  *Id.* (cleaned up).  The Court "should exclude hours that were not reasonably expended, such as for work that is 'excessive, redundant,

---

[9]  Recall that the parties agreed that of the applicable matrices, rates from the USAO matrix were appropriate.  *See supra* note 2.

or otherwise unnecessary.'" *Merrick v. District of Columbia*, 316 F. Supp. 3d 498, 517 (D.D.C. 2018) (cleaned up) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)); *cf. Salmeron v. District of Columbia*, 195 F. Supp. 3d 153, 171–73 (D.D.C. 2016) (applying *Hensley* and reducing certain hours as excessive or redundant).

The Court agrees with most of Magistrate Judge Harvey's reasoning on this issue. Ingenuity Prep did not successfully rebut the hours claimed merely by pointing out that the invoice from the Massey Law Group that Lloyd's counsel submitted to the Court differed from the invoice that she sent to opposing counsel during settlement negotiations. Report at 24–25. The version ultimately provided to the Court contained additional entries and more total hours, but it also covered a longer period. *Compare* Pl.'s Revised Mot. for Attorneys' Fees ("Pl's Revised Mot.") Ex. 10, ECF No. 27-10, *with* Def.'s Second Opp'n Ex. 1 at 133–35. And the presence of additional entries stems mainly from the later invoice accounting for counsel's time with greater particularity, down to the time spent on specific communications with the client or opposing counsel. *Id.* Ingenuity Prep does not back up its suspicion of the Massey Law Group invoice by contesting any specific entries. Nor does the Court find persuasive its vague allegations that the hours are unlikely to be correct. The School's criticism of the billing methods appearing in the older invoice is likewise immaterial given that it has failed to rebut the reasonableness of the invoice actually submitted to the Court. Def.'s Objs. at 14–17.

The Court, however, will sustain Ingenuity Prep's objection to the number of hours billed by Moran and Associates when representing Lloyd in federal court. *See* Pl.'s Revised Mot. Ex 12. To review: After Lloyd filed his complaint, Ingenuity Prep filed a counterclaim with its answer. Magistrate Judge Harvey recommended dismissing the counterclaim as time-barred after reviewing Lloyd's motion to dismiss, Ingenuity Prep's opposition, and Lloyd's reply brief.

13

*See* R. & R. ECF No. 9.  After considering the School's objection and Lloyd's response, the Court adopted the report and dismissed the counterclaim.  *See Lloyd*, 368 F. Supp. 3d at 30.

Ingenuity Prep states that Lloyd's counsel, Moran and Associates, billed over 34 hours of research related to the statute-of-limitations issue, nearly 20 hours drafting the three-and-a-half-page motion to dismiss, 8 hours drafting the six-and-a-half-page reply brief, and 17 hours drafting the nine-and-a-half-page response to the School's objection to Magistrate Judge Harvey's report.  Def.'s Second Opp'n at 33.  In contrast, counsel for Ingenuity Prep avers that she spent less than four hours researching and drafting a response to the motion to dismiss the counterclaim, as well as slightly less than four hours researching and responding to the report recommending dismissal.  *Id.* at 33–34 (citing *Id.* Ex. 1 at 169–70).  Lloyd did not contest this summary of hours in either of his reply briefs before Magistrate Judge Harvey or in his response to Ingenuity Prep's objections to the Report.  *See* Pl.'s Resp. to Def.'s Opp'n to Pl's Revised Mot. for Attys' Fees at 9–10, ECF No. 21; Pl.'s Reply to Def.'s Opp'n to Pl's Revised Mot. for Attys' Fees, ECF No. 31; Pl.'s Resp. to Def.'s Objs. to the Magistrate Judge's R. & R. at 11–13, ECF No. 41.

The Report still determined that Ingenuity Prep failed to show that the hours billed were unreasonable.  Acknowledging that Ingenuity Prep pointed to entries on the invoices where, collectively, Lloyd's counsel billed up to thirteen times more than opposing counsel on similar tasks, Magistrate Judge Harvey noted that the School had cited "no case in which a court found that the time expended on tasks by one party's counsel was unreasonable simply because it exceeded the time spent by opposing counsel on the same tasks."  Report at 26.  True enough. But even if not dispositive, the Court finds the comparison instructive—especially where the discrepancy is as vast as it is here.

Reviewing the Moran and Associates invoice by itself likewise leads to the same conclusion: The hours are excessive. The firm billed 85.9 hours of chargeable time.[10] One lawyer—Steven Nabors—conducted 37.5 hours of research and drafting for the briefing in front of Magistrate Judge Harvey and 33.6 hours of the same to produce one nine-page brief for this Court. *See* Pl's Revised Mot. Ex. 12 at 2–3. The statute-of-limitations issue was complex and required novel research. But the hours expended here were inordinate given the resultant briefing. Counsel's memorandum in support of the motion to dismiss was less than four pages long, including one page of legal analysis. *See* Pl.'s Mot. to Dismiss Ex. 1 at 3–4, ECF No. 5-1. More, while Lloyd's motion certainly flagged the statute-of-limitations issue, it was Magistrate Judge Harvey's comprehensive 18-page report—approximately the same length as all the briefing before him combined—that did the heavy and persuasive analytical lifting on the matter. Of course, as with the comparison to opposing counsel's time, the Court does not rely on page length alone as a precise benchmark. The Court appreciates succinct briefs. But all things considered, the Court determines that the hours billed by Moran and Associates were unreasonable.

As a remedy, the Court will reduce the hours. *See Merrick*, 316 F. Supp. 3d at 518 (reducing unsubstantiated and excessive hours from same law firm in IDEA case). The Court will cap at 40 the hours billed by Mr. Nabors for researching and drafting the motion to dismiss and the related briefs. This still amounts to five times the eight hours that Ingenuity Prep's counsel asserts that she spent in opposition, *see* Def.'s Second Opp'n at 33 (citing *Id.* Ex. 1 at 169–70), and it equates to a full work-week of billable time on a nuanced but narrow topic. A

---

[10]  Although the invoice lists 92.1 hours for all personnel, the entries make clear that 6.2 hours were zeroed. *See* Pl's Revised Mot. Ex. 12 at 3.

week's time is more than enough under the circumstances. The cap will reduce by $10,916.10 the amount due to Moran and Associates, before applying any other reduction.[11]

## D.

The Report recommends reducing the overall fee award by 40 percent because of Lloyd's limited success in the administrative proceedings. Report at 27–30. Lloyd does not object, but Ingenuity Prep contends that the Court should instead reduce the award by 65 percent. Def.'s Objs. at 17–19. The Court agrees with the Report's reasoning here in full.

In IDEA cases, it is within the Court's "discretion to reduce the overall fee award to reflect that degree of success, regardless of whether the total number of hours expended was reasonable." *Brown v. District of Columbia*, 80 F. Supp. 3d 90, 98 (D.D.C. 2015). In similar circumstances, the Supreme Court has counseled against using an overly "mathematical approach comparing the total number of issues in the case with those actually prevailed upon" to determine the degree of success. *Hensley*, 461 U.S. at 435 n.11 (1983). Heeding this guidance, courts in this district have taken a holistic approach when considering reductions based on partial success. *See, e.g.*, *Brown*, 80 F. Supp. 3d at 99; *Dickens v. Friendship-Edison P.C.S.*, 724 F. Supp. 2d 113, 121 (D.D.C. 2010).

Lloyd asked the hearing officer to find that the School denied M.L. a FAPE on four grounds, and for relief he requested that Ingenuity Prep (1) fund independent evaluations of M.L., (2) convene a meeting to review and revise M.L.'s IEP, and (3) fund 150 hours of tutoring as compensatory education. Compl. Ex. 1 at 2–4, ECF No. 1-1. The hearing officer determined that Lloyd prevailed on two of the four claims and ordered that Ingenuity Prep (1) finish

---

[11]  Reducing Mr. Nabors's combined 71.1 hours researching and drafting (i.e., 37.5 hours and 33.6 hours) to 40 hours amounts to a reduction of 31.1 hours. At Mr. Nabors's USAO matrix rate of $351.00/hr, this reduction will subtract $10,916.10 from the invoice's total of $32,533.50.

conducting its own non-independent evaluations, (2) convene a meeting to review and revise M.L.'s IEP, and (3) provide 100 hours of tutoring.  *Id.* at 11–17.  Lloyd thus prevailed on half of the claims and received only some of the remedies that he sought.  Ingenuity Prep attempts to dissect the issues and further subdivide them so that it can say that Lloyd prevailed on only two of six issues.  Def.'s Objs. at 18.  The effort is unpersuasive, and it defies the holistic approach the Court must take in weighing the degree of success.  The Court agrees with the Report that a 40 percent reduction of counsel's fees is warranted.

### E.

Lloyd's sole objection to the Report concerns its recommendation that the 40 percent reduction apply also to the fees incurred in federal court.  Pl.'s Obj. at 2–7.  According to Lloyd, he is entitled to "100% of his attorneys' fees for the 100% successful defense of Ingenuity's untimely counterclaim."  *Id.* at 3.  But for the reasons stated above, the Court agreed with the Report that it should assess the case a whole and consider the complexity of defending against the counterclaim when determining whether the case amounted to "complex federal litigation." *See supra* 11–12 & n.8.  Lloyd defended this aspect of the Report, and he now tries to have his cake and eat it too by claiming that the Court should nonetheless insulate the hours spent on the counterclaim from the reduction for limited success.  More, the counterclaim was in fact an appeal of the hearing officer's decision on the merits, *see* Def.'s Answer and Counterclaim at 4, so it was intertwined with the underlying administrative dispute.  Lloyd's success in persuading the Court to dismiss the counterclaim on procedural grounds did not transform the litigation into a distinct matter meriting an independent assessment.  The Court exercises its discretion to apply the same 40 percent reduction to all the hours.  *See* 20 U.S.C. § 1415(i)(3)(B)(i)

**IV.**

In sum, the Court adopts in full those aspect of the Report not mentioned in this opinion.

The Court rejects the parties' objections, except for Ingenuity Prep's objection to the number of

hours that Lloyd's counsel expended on defending against the counterclaim.  As explained

above, sustaining that objection reduces Lloyd's total claim of attorneys' fees from $76,954.20 to

$66,038.10.[12]  Reducing that amount by 40 percent results in an attorneys' fee award of

$39,622.86.  Neither party objected to the Report's determination on expert fees and costs, so the

Court will grant the following award:

| Attorneys' Fees: | $39,622.86 |
| --- | --- |
| Expert Fees: | $0.00 |
| Costs: | $1,244.50 |
| Total: | $40,867.36 |

For the reasons set forth, this Court adopts in part the Report and Recommendation of

Magistrate Judge Harvey and incorporates it by reference.  The Court will thus grant in part and

deny in part Lloyd's motion for attorneys' fees and award $40,867.36 in fees and costs.  A

separate Order will issue.


Dated: November 20, 2020                                      _____

                                                             TREVOR N. McFADDEN, U.S.D.J.

---

[12]  These amounts are calculated using the USAO Matrix rates in effect when counsel performed
the work.  *See* Report at 21.  Because counsel's invoices already bill hours at these rates, the
Court need not need recalculate them.  *Id.*